**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| JUDY NICOLE JACOBS, individually and as next friend of C.J., A MINOR, and CAMERAN E. JACOBS,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES, INC. d/b/a ABBOTT NUTRITION, H-E-B, LP and HEBCO GP, LLC.<br><br>Defendants. | Case No.<br><br>Judge: |

**NOTICE OF REMOVAL**

In this case, Texas-based Plaintiffs allege that they were harmed by an out-of-state manufacturer because that manufacturer "designed, manufactured, and distributed" supposedly tainted infant formula that purportedly injured their child. Although this is a textbook example of a case calling for diversity jurisdiction in federal court, Plaintiffs chose to assert these claims in Texas state court. Determined to stay there, moreover, Plaintiffs also chose to assert illusory claims against a non-diverse Texas retailer, H-E-B LP and HEBCO GP, LLC (collectively, "HEB"), under which they could never possibly hope to recover to create the fiction of incomplete diversity.

This well-worn trick—called "improper joinder" in the Fifth Circuit and "fraudulent joinder" in other jurisdictions—should not deprive Abbott of its removal right, as it is well-settled in this Circuit that a "court may disregard" and "dismiss [a] non-diverse defendant" against whom there is "no reasonable possibility of recovery" and then "exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136, 139 n.32 (5th Cir.

2016) (en banc). And here, there is "no reasonable basis for predicting" that Plaintiffs could ever recover against HEB, *Garcia v. Deere & Co.*, 2020 WL 4192894, at *2 (S.D. Tex. July 21, 2020) (emphasis omitted), because "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product" under Texas law, Tex. Civ. Prac. & Rem. Code § 82.003(a). HEB was therefore improperly joined and can be ignored for purposes of any diversity analysis.

That means that this Court has jurisdiction over this controversy because (1) there is complete diversity between Plaintiffs and the only defendant properly joined in this action, Abbott; (2) the amount in controversy as alleged by Plaintiffs exceeds $75,000, exclusive of interest and costs; and (3) this Court is the federal district and division embracing the place where the state-court litigation was initiated. Abbott therefore removes this action from Texas's 344th Judicial District in Chambers County, where it is pending as Cause No. 23DCV0254, to the U.S. District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and requests that this Court exercise jurisdiction over this matter.

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

1. On March 30, 2023, Plaintiffs Judy Nicole Jacobs (individually and as next friend of minor C.J.) and Cameran E. Jacobs (individually) filed this lawsuit in the 344th Judicial District Court in Chambers County, Texas. *See generally* March 30, 2023 Pet. (Ex. 2).

2. Plaintiffs served Abbott with their Petition and Summons on March 31, 2022. *See id.* Pursuant to 28 U.S.C. § 1446(b)(1), this notice is timely filed.

3. As 28 U.S.C. § 1446(a) requires, Abbott has attached to this Notice of Removal "a copy of all process, pleadings, and other orders served upon" it. Abbott has also attached the state court docket showing all docket entries. *See* 23DCV0254 Docket (Ex. 1).

4. Abbott (the movant here) consents to removal in accordance with 28 U.S.C. § 1446(b)(2)(A). Consent is not required from HEB as they were improperly joined for the reasons

set forth below. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("[N]o need to obtain the consent of the improperly or fraudulently joined defendants ...."). Nonetheless, Abbott understands that the HEB Defendants consent to removal.

5. Upon filing this Notice of Removal, Abbott will provide written notice to Plaintiffs and will file a Notification of Removal (attaching a copy of this Notice) with the state court, as 28 U.S.C. § 1446(d) requires.

6. This case is properly before this Court because the 344th Judicial District for Chambers County, Texas, is located within the Southern District of Texas. *See* 28 U.S.C. § 124(b)(1). Venue is therefore proper because this Court is the "district and division within which such action is pending." 28 U.S.C. § 1446(a); *see generally* Pet. (Chambers County, Texas, action). Additionally, Plaintiffs allege that they reside within Chambers County. *See* Pet. ¶¶ 1-2.

**DIVERSITY JURISDICTION**

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiffs and the removing defendant, Abbott, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

### A. There Is Complete Diversity.

8. Plaintiffs are residents of Texas. Pet. ¶¶ 1-2.

9. Defendant Abbott Laboratories Inc. is incorporated in Delaware and has its principal place of business in Abbott Park, Illinois; consequently, Abbott was a citizen of Delaware and Illinois for diversity purposes at the time the Petition was filed (and remains so today). 28 U.S.C. § 1332(c)(1); *see also* Pet. ¶ 4 (alleging Illinois and Delaware citizenship).

10. The Petition also purports to assert claims against two HEB entities, H-E-B LP and HEBCO GP, LLC. *Id.* ¶¶ 5-6. As discussed below, however, those entities were improperly

joined. That means that even though they are both allegedly Texas citizens, their citizenship should be disregarded for purposes of diversity under 28 U.S.C. § 1332. *See infra* § II.

11. There is therefore complete diversity between Plaintiffs and Abbott, the only properly joined defendant.

**B. The Amount In Controversy Exceeds $75,000.**

12. Subject-matter jurisdiction based on diversity of citizenship requires that the amount in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "[T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" with certain exceptions inapplicable here. 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014).

13. Here, Plaintiffs directly place far more than $75,000 in controversy. *See* Pet. ¶ 80 ("Pursuant to Rule 47 of the Texas Rules of Civil Procedure and the foregoing factual allegations and claims asserted by Plaintiffs against the Defendants herein, exceeds $1,000,000.00 in damages, to which Plaintiffs seek to recover from the Defendants who are jointly and severally liable."). Consequently, while Abbott contests that Plaintiffs are entitled to damages in any amount, the amount in controversy requirement is satisfied here: this Court has subject matter jurisdiction.

**II. HEB WAS IMPROPERLY JOINED.**

14. "Ordinarily, diversity jurisdiction requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg*, 819 F.3d at 136. But there is an important exception to this default rule: If a "plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Id.*

15. To show that a non-diverse party has been "improperly joined," a removing defendant can demonstrate that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a nondiverse] defendant." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 199-200 (5th Cir. 2016) (alteration in original) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). A removing defendant, in other words, "need not prove that there is no possibility whatsoever that the [plaintiffs] could theoretically recover from" a non-diverse defendant—the absence of a "*reasonable* basis for predicting" recovery is all that is required. *Garcia*, 2020 WL 4192894, at *2; *see also Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) ("must be a *reasonable* possibility of recovery, not merely a *theoretical* one").

16. To undertake the improper-joinder inquiry, courts typically "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Flagg*, 819 F.3d at 136 (quoting *Smallwood*, 385 F.3d at 573); *Coulter v. Deere & Co.*, 2022 WL 912778, at *2 (S.D. Tex. Mar. 29, 2022) ("The 12(b)(6)-type analysis requires applying the *Twombly* and *Iqbal* plausibility standard."). When, however, a "plaintiff's complaint has 'misstated or omitted discrete facts that would determine the propriety of joinder,' the court may instead 'pierce the pleadings and conduct a summary inquiry.'" *Flagg*, 819 F.3d at 136 (quoting *Smallwood*, 385 F.3d at 573). Such an inquiry "is appropriate" where "discrete and undisputed facts" not apparent on the face of the Petition "would preclude … recovery against the in-state defendant." *Id.* at 136-37 (quoting *Smallwood*, 385 F.3d at 573-74).

17. Here, each of Plaintiffs' claims against HEB fails on the face of the petition as a matter of law under Texas Civil Practices and Remedies Code Section 82.003(a), which provides

that a "seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless" at least one of seven exceptions apply—and none of the seven apply here.

18. Because Plaintiffs cannot possibly recover against HEB, the Court should disregard and dismiss HEB and exercise jurisdiction over this matter.

**A. Plaintiffs' Claims Against HEB Fail Because HEB Is, At Best, A Non-Manufacturing Seller.**

19. Plaintiffs assert five claims against HEB—"[a] seller that did not manufacture a product"—"for harm" purportedly "caused … by" a "product" that it sold. *See* Tex. Civ. Prac. & Rem. Code § 82.003(a)(1); Pet. ¶¶ 50-53 (negligence), 55-59 (strict liability), 61-67 (express warranty), 69-76 (implied warranty), 77 (Deceptive Trade Practices Act ("DTPA")). But in Texas, "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves" that one of seven statutory exceptions apply. Tex. Civ. Prac. & Rem. Code § 82.003(a). This statutory bar dooms each and every one of Plaintiffs' claims against HEB because (1) each of the claims falls within the reach of Section 82.003(a) in that Plaintiffs seek recovery for "harm [allegedly] caused" by a product that HEB sold yet did not manufacture, and (2) none of the seven exceptions to seller immunity apply here on the face of the Petition under a standard 12(b)(6)-type inquiry.

1. <u>Section 82.003(a) covers each of Plaintiffs' claims against HEB.</u>

a. *The facts in the Petition show that HEB is a retailer, not a manufacturer of Abbott's formula.*

20. The factual allegations in Plaintiffs' Petition repeatedly show that HEB was the retailer that sold, but did ***not*** manufacture, the formula at issue. Per the Petition, that formula—"Similac Sensitive Optigro Infant Formula with Iron, from lot 20974RE 217"—was "designed, manufactured and distributed" by ***Abbott***. Pet. ¶¶ 10-11; *see also id.* ¶ 59(f) ("The manufacturer of said product is ABBOTT ...."). Indeed, per Plaintiffs, it "came from a lot of baby formula

manufactured in ABBOTT's manufacturing plant located in Casa Grande, Arizona." *Id.* ¶ 13. The formula was not produced by HEB as they are "***retailers***" through whom Abbott's formula entered the consumer market in Texas. *Id.* ¶ 10 (emphasis added). As the Petition puts it, "[t]he HEB Defendants were … and are now engaged in the business of selling"—not manufacturing—"baby formula ***at retail*** to members of the general public." *Id.* ¶ 14 (emphasis added).

b. *Plaintiffs' claims fall within reach of Section 82.003(a).*

21. All of Plaintiffs' claims against HEB—negligence, strict liability, express warranty, implied warranty, and DTPA—are covered by the Texas Product Liability Act's innocent-retailer shield in Section 82.003(a) because (i) they are all product-liability actions as that term is defined in the Act, and (ii) HEB was not the manufacturer. Under the Product Liability Act:

> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product ***whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty***, ***<u>or any other theory or combination of theories</u>*****.**

Tex. Civ. Prac. & Rem. Code § 82.001(2) (emphasis added). In other words, "all claims for personal injury allegedly caused by a defective product are, regardless of the theory alleged, products liability actions." *Garnett v. Remington Arms Co.*, 2018 WL 4688813, at *5 (W.D. Tex. June 14, 2018), *report & recommendation adopted*, 2018 WL 5733170 (W.D. Tex. Oct. 15, 2018). This includes, as the Fifth Circuit has recognized, DTPA claims. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) ("The Family contends its claims of fraud, conspiracy, and DTPA violation are not 'products liability' claims. That might be so in the traditional sense of 'products liability' as a legal term of art, but the definition in § 82.001(2) plainly forecloses this argument." (citations omitted)).

22. Consequently, when the Act provides that "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product," Tex. Civ. Prac. & Rem.

Code § 82.003(a), it necessarily means that "a nonmanufacturing seller is not liable in a *products-liability suit*" as that term is defined in the act, *Coulter*, 2022 WL 912778, at *2 (emphasis added). This is true regardless of whether "a particular claim" is "labeled … as a products-liability claim" in some traditional sense or not. *Howard v. Lowe's Home Centers, LLC*, 306 F. Supp. 3d 951, 956 (W.D. Tex. 2018). Instead, Section 82.003(a)'s immunizing shield covers ***all*** claims for "liability aris[ing] out of personal injuries or property damages caused by a defective product." *Id.*

23. Here, all of Plaintiffs' claims against HEB are product liability claims under the broad statutory definition because each seeks "recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product." Tex. Civ. Prac. & Rem. Code § 82.001(2). As a result, such claims are plainly covered by the innocent-retailer provision in Section 82.003(a). This is true of both the claims Plaintiffs assert that are specifically enumerated in the definition of "Products liability action" (negligence, strict liability, express warranty, and implied warranty) and also of the single claim not specifically enumerated (DTPA) because it is clearly "an action against" a "seller for recovery of damages arising out of personal injury" "caused by a defective product" "based in" an unenumerated "theory." *See id.*; *see also Howard*, 306 F. Supp. 3d at 956 (DTPA claim barred by innocent-retailer provision).

2. <u>None of Section 82.003's exceptions apply.</u>

24. Because HEB is a "seller that did not manufacture [the allegedly defective] product," Tex. Civ. Prac. & Rem. Code § 82.003(a), Plaintiffs can only "state a cause of action" against HEB if they have adequately pled *facts consistent with Rule 12(b)(6)* to support "at least one of [Section 82.003(a)'s] statutory exceptions," *see Ramirez v. Electrolux Home Prods., Inc.*, 2013 WL 12140295, at *2 (S.D. Tex. Oct. 22, 2013). Stating a claim under Rule 12(b)(6) means pleading "sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added; citation omitted). This

standard "does not require the plaintiff to allege extensive factual allegations, but the pleading must include more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Garcia*, 2020 WL 4192894, at *2 (quoting *Iqbal*, 556 U.S. at 678). Merely offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

25. Here, Plaintiffs do not come close to plausibly alleging that any of the exceptions in the Product Liability Act applies here—certainly not in a manner consistent with Rule 12(b)(6). Instead, Plaintiffs transparently attempt to state a claim against HEB—and, in so doing, immunize their lawsuit from removal—by throwing around a litany of factually inapposite buzzwords in purporting to describing HEB's supposed conduct. For instance, Plaintiffs allege—with no support whatsoever—that:

> [HEB] were and are engaged in the grocery and retail business including, but not limited to, the selling, the designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, attachments, associated warnings and constituents thereof, or lack of the same known as the subject Similac Sensitive Optigro Infant Formula with Iron.

Pet. ¶ 56. Plaintiffs then largely regurgitate six of the seven Section 82.003(a) exceptions with "seller" and "manufacturer" swapped out for the HEB Defendants and Abbott respectively. *Id.* ¶ 59. But Plaintiffs fail to properly state even a single exception, and their "labels and conclusions" "formulaic recitation of the elements" of such exceptions unsupported by any factual allegations "will not do." *See Twombly*, 550 U.S. at 555.

a. *<u>Exception 1</u>: HEB did not participate in the design of the product.*

26. Because Plaintiffs do not plead any facts tending to show that HEB "participated in the design of the product," the first exception to the liability shield does not apply. Tex. Civ.

Prac. & Rem. Code § 82.003(a)(1). Plaintiffs baldly assert that HEB "designed" (among almost every other conceivable verb that could relate to product manufacture or sale) the "Similiac Sensitive Optigro Infant Formula." Pet. ¶ 56. But Rule 12(b)(6) requires Plaintiffs to plead "factual matter," *Iqbal*, 556 U.S. at 678, rather than just "labels and conclusions," *Twombly*, 550 U.S. at 555. And here, there are no facts showing that HEB was the designer. Indeed, the factual allegations show just the opposite—***Abbott*** was the "designe[r]" and manufacturer; ***HEB*** was the "***retailer***." *See, e.g.*, Pet. ¶¶ 10 ("ABBOTT … designed" and "distributed *its* products … through agent *retailers, such as the HEB Defendants* (emphases added)), 13 (product "came from a lot of baby formula manufactured in ABBOTT's manufacturing plant"), 14 ("The HEB Defendants … are now engaged in the business of selling baby formula at retail"), 15 ("sold by HEB Defendants (*i.e.*, retailers) to Plaintiffs"). The first Section 82.003(a) exception therefore does not apply.

b. *<u>Exception 2</u>: HEB did not alter or modify the product.*

27. Plaintiffs' Petition does not support the second exception either. That exception applies only when "the seller altered or modified the product and the claimant's harm resulted from that alteration or modification." Tex. Civ. Prac. & Rem. Code § 82.003(a)(2). But Plaintiffs affirmatively plead that HEB did *not* modify the product when they claim that "[t]he Similac Sensitive Optigro Infant Formula with Iron was in the ***same condition*** at the time C.J. was injured ***as it was when it was originally manufactured*** and at the time it was sold by HEB Defendants (*i.e.*, retailers) to Plaintiffs." Pet. ¶ 15 (emphases added). So it goes without saying that Plaintiffs have failed to plead facts to support their conclusory assertion that the "HEB Defendants altered or modified the product, packaging, and/or marketing." Pet. ¶ 59(b). What is more, even if this conclusory allegation were supported by facts, it would still be inadequate to state the exception because it does not even suggest that "the claimant's harm resulted ***from that alteration or***

***modification***." Tex. Civ. Prac. & Rem. Code § 82.003(a)(2) (emphasis added); *see also Coulter*, 2022 WL 912778, at *3 ("Their petition does not describe how" the non-manufacturer defendants "alter[ed] a particular part in a way that caused the mower to flip and ignite.").

c. *Exception 3: HEB did not install the product on another product.*

28. Plaintiffs' recital of Section 82.003(a)'s exceptions does not even quote a modified version of this exception, *see* Pet. ¶ 59, and nothing in the Petition even remotely suggests that HEB somehow "installed the" formula "on another product" in a way that resulted in harm. Tex. Civ. Prac. & Rem. Code § 82.003(a)(3). That is nonsensical and cannot be possible basis for recovery against HEB.

d. *Exception 4: HEB did not exercise substantial control over product warnings.*

29. Again, while Plaintiffs recite a modified version of the fourth exception in their Petition, they provide nothing to support their unadorned assertion that HEB "exercised substantial control of any warnings or instructions that accompanied the product." Pet. ¶ 59(c). Indeed, their allegation that the formula was "in the same condition at the time C.J. was injured as it was when it was originally manufactured," *id.* ¶ 15, again undercuts the possibility that HEB (*i.e.,* the retailer) somehow modified the instructions or warnings, *see id*. ¶ 59(b). It is, moreover, difficult to understand how or why a "retailer"—as the Petition repeatedly refers to HEB—who owns a "store" and sells products produced at an unaffiliated company's manufacturing facility would be at all involved in that separate company's instruction or warning process, to say nothing of having "substantial[ly] control[led]" such warnings. *See id.* ¶¶ 4-6 (alleging information about each named defendant tending to show that the HEB entities are affiliated with each other, but not with Abbott). And this logical leap is especially difficult to take under the facts alleged in the Petition, because, as the Petition expressly alleges, HEB purportedly sells separate, non-Abbott,

***HEB***-branded products for which they ***are*** presumably involved at some level in manufacturing and labeling decisions. *See id*. ¶ 20.[1]

30. What is more, even if their unsupported allegation is credited, Plaintiffs still fail to show that the exception applies because the exception requires "control over the ***content*** … that accompanied the product," not mere "control of" the warnings or instructions in the sense that HEB may have had "control" over individual products in their inventory that contained warning or instruction language. Tex. Civ. Prac. & Rem. Code § 82.003(a)(4). Because Plaintiffs "do[] not allege" any facts showing that HEB "exercised any control over the warnings or instructions that accompanied the" formula regarding its bacterial integrity, they do not plausibly allege that this exception applies. *See Johnson v. Ford Motor Co.*, 2022 WL 1471425, at *5 (N.D. Tex. May 10, 2022).

e. *Exception 5: HEB did not make any express representations about an aspect of the product.*

31. Plaintiffs' Petition is devoid of any factual support for their naked assertion that HEB "made express factual representations about an aspect of the product that were incorrect and were relied upon by the Plaintiffs and their infant son, in obtaining the product." Pet. ¶ 59(d). Nowhere do Plaintiffs even "mention a specific express factual representation" by HEB "in their complaint that" could conceivably trigger the exception. *Garnett*, 2018 WL 4688813, at *4. The only statements recited in the Petition are statements from ***Abbott's*** website. *See* Pet. ¶ 16. And these are the only representations that Plaintiffs refer to in support of their warranty claims. *See id.* ¶ 61 ("The Defendants provided Plaintiffs with written express warranties by promotion and

[1] It is noteworthy that the Petition specifically identifies a separate HEB-branded product consumed by the infant but then fails to assert a single claim based on that product. *See generally* Pet.

other means that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.”).

32. The only fact alleged in relation to HEB is that they, as a “retailer,” ***“sold”*** formula manufactured by Abbott. But the mere “fact that [HEB] sold the [formula] to [Plaintiffs] was not an express representation that the [formula] was safe.” *Pizana v. Jerry’s Auto Sales*, 2019 WL 4280016, at *6 (S.D. Tex. July 23, 2019), *report & recommendation adopted*, 2019 WL 4274453 (S.D. Tex. Sept. 10, 2019). Regardless, any representation to that effect would not support the exception as “the statute’s text limits its application to representations about ‘an aspect of the product’ rather than to statements about the product in general.’” *See Howard*, 306 F. Supp. 3d at 958–59 (emphasis removed). Plaintiffs have again failed to adequately allege this exception.

f. <u>*Exception 6*</u>*: HEB did not know of any alleged defect.*

33. There are similarly “***no*** substantive facts pled to support” Plaintiffs’ “general allegations that [HEB] supposedly knew of [the product’s allegedly] defective condition.” *Williams v. Avon Prods., Inc.*, 2019 WL 6040073, at *5 (S.D. Tex. Oct. 24, 2019) (emphasis added), *report & recommendation adopted*, 2019 WL 6038525 (S.D. Tex. Nov. 14, 2019); *see also Coulter*, 2022 WL 912778, at *3 (“[P]laintiffs do not plead specific facts to support their conclusory allegations that the defendants had actual knowledge of a defect ....”). As already explained, the Petition alleges that *Abbott*, not HEB, manufactured the infant formula product at its manufacturing facility, Pet. ¶¶ 13, 59(f); Plaintiffs then received that product in the “same condition” in which it had existed “when it was originally manufactured,” *id.* ¶ 15.

34. The Petition, moreover, fails to point to any facts suggesting that HEB could have possibly been aware of any problem at Abbott’s manufacturing facility or with the formula produced at that facility at the time of the sale. *See Garnett*, 2018 WL 4688813, at *3 (explaining how a plaintiff could possibly “establish a seller’s actual knowledge with evidence” of things like

"recall notices about a defect, customer complaints relating to the defect, safety testing reports, and internal communications showing a seller's employees knew of a problem at the time of sale"). At most, it alleges that Abbott—not HEB—learned of ***potential*** issues at a ***separate*** Abbott facility (in Sturgis, MI) ***a year after*** Plaintiffs bought and used their formula (which they allege was manufactured at a different Abbott facility in Arizona)). Pet. ¶¶ 16-17 (Sturgis facility, *not* Arizona facility). These allegations fall far short of the actual-knowledge mark.

35. Furthermore, Plaintiffs tacitly concede that they have insufficient facts to support their actual-knowledge assertion by elsewhere alleging that HEB "knew *or should have* known" about the defect. *Id.* ¶ 55 (emphasis added). Courts have repeatedly rejected efforts to invoke this exception with "should-have" allegations like these because "Texas law requires actual knowledge of the condition that renders the product defective," *Coulter*, 2022 WL 912778, at *3. "Section 82.003(a)(6)'s actual knowledge requirement means just what it says, and cannot be satisfied with a showing of negligent oversight, constructive knowledge, or similar allegations that a seller could or should have known of a defect in a product." *Williams*, 2019 WL 6040073, at *4 (quotations omitted). And thus "[f]ederal courts addressing Chapter 82's actual knowledge exception have uniformly held that a plaintiff who alleges that a nonmanufacturing seller should-have-known of a product defect has failed to adequately state a viable claim under Rule 12(b)(6)." *Id.*; *see also Johnson*, 2022 WL 1471425, at *6 (insufficient to allege seller "'actually knew or reasonably should have known' that the car contained the defective accelerator pedal"). Because Plaintiffs "have not pled any facts that can reasonably support the[ir] argument that [the HEB Defendants] had actual knowledge regarding the defectiveness as required by § 82.003(a)(6)," this exception plainly does not apply here. *Garnett*, 2018 WL 4688813, at *3.

g. *<u>Exception 7</u>: Abbott is solvent and subject to this Court's jurisdiction.*

36. Finally, Plaintiffs fail to state the seventh exception. Nowhere do Plaintiffs claim that Abbott is insolvent. And to the extent they suggest that Abbott is not subject to the jurisdiction of this Court, their Petition itself contradicts that assertion as ***they have named Abbott as a party in their lawsuit*** and ***specifically alleged that the "Court has jurisdiction over Defendants,"*** including Abbott. *See* Pet. ¶ 9. Should, however, the Court agree with Plaintiffs' puzzling assertion that the product manufacturer—Abbott—is not subject to jurisdiction in Texas, it should dismiss Abbott as well.

**B. Plaintiffs' DTPA Claim Against HEB Independently Fails Under Rule 9(b).**

37. Plaintiffs' DTPA claim against HEB fails for an independent reason as well: Plaintiffs have failed to state this claim with particularity as to at least HEB. "Courts have consistently applied Rule 9(b)'s heightened pleading requirement to DTPA claims." *Garcia*, 2020 WL 4192894, at *3; *see also Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." (citation omitted)). And to state a claim under Rule 9(b), "Plaintiffs must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *id*. at 1009 (quotations omitted).

38. Here, "Plaintiffs' allegations suffer from a combination of defects, including a failure to plead adequately *what* [HEB] representations were actually made, *when* those representations were made, *who* made the representations, and *where* those representations occurred." *Id.*

- ***What***: Plaintiffs point to no statement by HEB at all, so they have plainly not pled the specific content of the HEB statement they are contending was fraudulent.

- ***When***: They point to nothing to show when HEB made any statements to them—and alleging purchase dates alone is "insufficient" under published Fifth Circuit precedent. *See id.*

- ***Who***: The only statement Plaintiffs point to in their Petition is an Abbott statement—that they never allege that they read before their purchases—so plainly their "who" allegations in reference to HEB are deficient.

- ***Where***: Plaintiffs never explain where or how they encountered any HEB representation at all—and, again, the only statement identified in the Petition is an Abbott statement on Abbott's website that Plaintiffs never allege that they visited.

39. Plaintiffs do not even come close to stating a DTPA claim against HEB, let alone with requisite particularity. As a result, "there is no reasonable basis to believe [that they] will be able to recover from [the HEB Defendants] on their DTPA claim" even if they could get past the Products Liability Act bar (which they cannot). *Garcia*, 2020 WL 4192894, at *3.

* * * * *

40. In the end, because there is no possibility that Plaintiffs can recover against HEB on any of their five claims, the HEB entities were improperly joined to the state-court action. *See Int'l Energy Ventures Mgmt*, 818 F.3d at 200. That leaves Abbott as the lone defendant, and because Abbott and Plaintiffs share complete diversity, removal to this Court is proper.

**CONCLUSION**

For the foregoing reasons, Abbott properly removes this action from the 344th Judicial District Court in Chambers County, Texas, to the U.S. District Court for the Southern District of Texas.

Dated: April 28, 2023

Respectfully submitted,

*/s/ Robert Edward Booth*

Robert Edward Booth
Texas Bar No. 24040546
S.D. of Texas Bar No. 36858
MILLS SHIRLEY LLP
2200 Market St. Ste. 300
Galveston, TX 77550
Tel: 409-761-4001
Fax: 409-761-4001
rbooth@millsshirley.com

Michael A. Glick (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com

*Attorneys for Abbott Laboratories Inc. d/b/a Abbott Nutrition*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which sent notification of this filing to all counsel of record.

Dated: April 28, 2023

*/s/ Robert Edward Booth*
Robert Edward Booth