United States District Court
Southern District of Texas

**ENTERED**
July 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JUDY NICOLE JACOBS, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-00132 |
| | § | |
| ABBOTT LABORATORIES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This is a products liability case brough by Plaintiffs Judy Nicole Jacobs, individually and as next friend of C.J., a minor; and Cameran A. Jacobs. Pending before me is a motion for summary judgment filed by Defendant Abbott Laboratories, Inc. d/b/a Abbott Nutrition. *See* Dkt. 127 (redacted); Dkt. 128 (sealed).[1] Having reviewed the briefing, the record, and the applicable law, I recommend that Abbott's motion for summary judgment be granted.

## BACKGROUND

The parties identify few genuinely disputed facts. Rather, their disagreement centers on what inferences may reasonably be drawn from those facts.

C.J. was born full term without pregnancy or delivery complications on September 19, 2020. It is undisputed that, in September 2020, C.J. consumed Abbott's Similac Sensitive powdered infant formula (the "Formula"), which was contaminated with a bacterium known as *Cronobacter sakazakii*. The *Cronobacter* caused a bacterial meningitis infection, which C.J. survived, but only

---

[1] A reference chart showing the sealed and redacted versions of the parties' briefing and exhibits is available. *See* Dkt. 175. Because resolving this motion does not require quoting any sealed information, I have cited only to the publicly available, redacted versions of the parties' briefing and exhibits.

after undergoing brain surgery and ultimately suffering permanent hearing loss in one ear.

Plaintiffs purchased the Formula on September 20, 2020, and began feeding C.J. the Formula on September 21, 2020. On September 30, 2020, C.J. became ill and was admitted to the hospital due to a concern of bacterial meningitis. It is undisputed that Abbott manufactured the Formula at its Casa Grande, Arizona facility, and that C.J. consumed formula only from that one can. It is also undisputed that the strain of *Cronobacter* found in the Formula matched the strain found in C.J.'s cerebrospinal fluid. Thus, it is undisputed that the *Cronobacter* found in the Formula was the cause of C.J.'s infection. The causation question presented by the summary judgment briefing turns on whether the Formula became contaminated with *Cronobacter* while it was in Abbott's hands or in Plaintiffs' home.

The other undisputed facts are as follows:

- In 2017, Abbott discovered *Enterobacteriaceae*[3] on two separate occasions, and *Cronobacter* on one occasion, at its Casa Grande facility in its dryer-sifter east floor, but not in any finished products of infant formula. *See* Dkt. 177 at 15.

- Abbott discovered *Cronobacter* in a finished product batch of powered infant formula in 2018 and destroyed the batch before distribution. *See* Dkt. 127 at 12; Dkt. 177 at 16; Dkt. 149 at 9–10.

- The Formula was manufactured at Abbott's Casa Grande facility in August 2020.

- While the Formula was being manufactured, Abbott detected *Enterobacteriaceae* during an early stage of the manufacturing process. Abbott continued manufacturing the batch. The batch was tested for *Enterobacteriaceae* during the later stages of manufacturing and no *Enterobacteriaceae* was detected during those later stages. Once the Formula's batch was run through the

---

[3] "Enterobacteriaceae is a family of Gram-negative bacteria. It includes many genera, including *Escherichia*, *Klebsiella*, *Enterobacter*, *Salmonella*, *Shigella*, and *Cronobacter*." Dkt. 136-8 at 3. Thus, a positive *Enterobacteriaceae* swab could be indicative of *Cronobacter*, but it could also be indicative of other genera. Only further testing can confirm whether a positive *Enterobacteriaceae* swab is *Cronobacter*.

dryer, or the kill step, Abbott conducted composite testing on 60 cans of finished product out of 45,288 cans produced in the Formula's entire lot. The composite testing on the 60 cans was negative for *Cronobacter*. *See* Dkt. 177 at 17; Dkt. 149 at 10 n.3.

- On August 12, 2020, while the Formula was stored in Abbott's warehouse, *Enterobacteriaceae* was found in a different part of the facility (again on the dryer-sifter east floor), but not in any finished product of infant formula. This isolate of *Enterobacteriaceae* tested negative for *Cronobacter*. *See* Dkt. 177 at 17; Dkt. 149 at 9 n.2.

- The finished cans of the Formula's lot were stored in Abbott's warehouse until the lot was approved for release and distribution on August 18, 2020.

- *Cronobacter* was not found in Abbott's Casa Grande facility in the entire year (2020) in which the Formula was produced. *See* Dkt. 149 at 9.

- C.J. "arrived at home on September 20, where he lived with seven family members—his parents, two older siblings, two grandparents, and an uncle—along with two dogs and a cat." Dkt. 127 at 13. "In the days after C.J.'s arrival, the family welcomed six visitors, each of whom held C.J." *Id.* "Both family members and visitors wore shoes inside the house, and the pets freely walked between the inside and outside of the home." *Id.*

- Plaintiffs' experts agree that "the presence of pets in a home increases the risk of Cronobacter incidence in the home." Dkt. 127-7 at 27; *see also* Dkt. 127-8 at 6–7.

- Plaintiffs' experts also agree that homes in which "individuals wore shoes from outside" is a "factor associated with Cronobacter presence." Dkt. 127-8 at 8; *see also* Dkt. 127-7 at 16–17 (refusing to "dispute the notion that Cronobacter has the potential to come into homes on the soles of shoes or on hands").

- After learning of C.J.'s illness, Abbott and the Food and Drug Administration ("FDA") tested almost 50 sealed cans of formula from the Formula's batch—all of which tested negative.

- The FDA, Centers for Disease Control and Prevention ("CDC"), and Texas Department of State Health Services ("DSHS") investigated C.J.'s illness and the Formula. All closed their investigations without taking any action or requiring that any formula be recalled.

3

- Neither Abbott nor any government authority received any other complaints of *Cronobacter*-related illnesses related to the Formula batch.

- On November 28, 2020, *Enterobacteriaceae* was again discovered at the Casa Grande facility in the dryer-sifter east floor, but not in any finished product of infant formula. This isolate tested negative for *Cronobacter*. *See* Dkt. 177 at 18; Dkt. 149 at 9 n.2.[4]

On April 28, 2023, Plaintiffs instituted this action against Abbott . The live claims are for negligence, strict product liability, and breach of the implied warranty of merchantability. Abbott has moved for summary judgment arguing that Plaintiffs' claims fail as to causation and, alternatively, that Abbott is entitled to partial summary judgment on at least Plaintiffs' labeling claims and certain damages. As for causation, the only dispute concerns whether a reasonable juror could, considering all the undisputed facts, infer that it is more likely than not that the Formula was contaminated during Abbott's manufacturing process in August 2020 at the Casa Grande facility. *See* Dkt. 177 at 24 (Plaintiffs acknowledge that the only two potential sources of the contamination were Abbott's Casa Grande facility and Plaintiffs' home). Because, as explained below, Plaintiffs have not carried their summary judgment burden as to causation, I need not reach Abbott's arguments regarding partial summary judgment on Plaintiffs' labeling claims and damages.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] Plaintiffs offer several facts about events at the Casa Grande facility starting eight months *after* the Formula's lot was approved for release and distribution. Setting aside the questionable relevance of these facts, they serve only to establish what is already undisputed: that the Casa Grande facility is one *possible* source of contamination. They are not facts from which a reasonable jury could conclude that it is more likely than not that the Formula was contaminated at Abbott's Casa Grande facility in August 2020. Nor are facts about Abbott's *other* facilities in different states facts from which a reasonable jury could conclude that it is more likely than not that the Formula was contaminated at Abbott's *Casa Grande* facility in August 2020.

Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosp. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Where, as here, the movant does not bear the burden of proof, its burden is satisfied by showing that the other party has a "failure of proof on an essential element of its claim." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *See Celotex*, 477 U.S. at 325.

The parties satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In evaluating whether summary judgment is appropriate, I "consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004). I must view all "the evidence in the light most favorable to the [party opposing summary

judgment] and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

All of Plaintiffs' claims—negligence, strict product liability, and breach of implied warranty—require Plaintiffs to create a genuine issue of material fact as to causation. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995) (negligence and strict liability both require proof of causation), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999) (breach of implied warranty requires proof of causation). Because the contaminated Formula and C.J.'s infection are genetically linked, causation turns on whether Plaintiffs can point to competent evidence from which a reasonable jury could find that the contamination more likely than not occurred before the Formula left Abbott's control.

Plaintiffs acknowledge that there are two possible sources of the Formula's contamination: Abbott's Casa Grande facility and "Plaintiffs' home environment." Dkt. 177 at 24. Sheer possibility, however, will not satisfy Plaintiffs' burden as to causation. "[A] possible cause only becomes 'probable' when in the absence of other reasonable causal explanations it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue can be submitted to the jury." *Parker v. Emps. Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 47 (Tex. 1969). Thus, at summary judgment, Plaintiffs must point to evidence that could nudge the mere possibility of contamination at the Casa Grande facility, as opposed to Plaintiffs' home, from possible to "more likely than not." *Id.* Plaintiffs point to no such evidence.

Plaintiffs' home is not a merely a theoretical alternative source of contamination. The undisputed record shows the presence of multiple recognized risk factors for *Cronobacter* at the Plaintiffs' home, including pets moving between indoors and outdoors, shoes worn inside the home, and multiple visitors handling

6

C.J. Despite this, Plaintiffs contend that "[t]here is empirical evidence and data in the form of testing that serves as circumstantial evidence pointing to the [Abbott's Casa Grande] plant as the source of the *Cronobacter*." Dkt. 177 at 24. Not so. The evidence in the record merely points to the Casa Grande facility as one *potential* source of contamination, just as the opened can's presence in Plaintiffs' home, combined with the undisputed household risk factors identified by Plaintiffs' experts, makes Plaintiffs' home another *potential* source of contamination.

Plaintiffs argue that one of their experts, Dr. Abigail Snyder, "testified at her deposition . . . that while no direct smoking gun evidence exists as to any cause of contamination, Abbott's [Casa Grande] facility is the much more likely cause than the home environment." Dkt. 177 at 26–27 (citing Dkt. 136-5 at 10). But Dr. Snyder said no such thing. Rather, Dr. Snyder stated that the Formula "reasonably could have been contaminated in the [Casa Grande] facility." Dkt. 136-5 at 10. Dr. Snyder also testified that she could not rule out contamination in Plaintiffs' home, and that "[i]t is possible for the formula to have been contaminated [after it was opened in Plaintiffs' home]." Dkt. 127-8 at 4. Dr. Snyder attempted to limit the impact of this testimony by stating: "I can't definitively rule out the possibility that [the Formula] was contaminated in the Jacobs' home; however, there is not evidence of Cronobacter in the home and the Jacobs used hygenic [sic] practices to prepare it." *Id.* at 3. But there is similarly no evidence of *Cronobacter* in the Casa Grande facility in the entire year that the Formula was produced despite Abbott's testing. Thus, "Dr. [Snyder]'s opinion as to causation of the [contamination is] ambivalent and is of no help to the jury in sorting out a reliable explanation of how the [contamination] occurred." *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018). "[A] fact may not be inferred from circumstantial evidence that could support multiple inferences if none are more probable than the others. In addition, an inference drawn only from other inferences (rather than direct evidence) is not legally sufficient evidence." *Smith v. Landry's Crab Shack, Inc.*, 183 S.W.3d 512, 514 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (cleaned up).

Plaintiffs argue that "[t]here is no empirical evidence or data, in the form of any testing of any surfaces or other items within the home environment, that points to the home as the source of the *Cronobacter*." Dkt. 177 at 24. This argument misses the mark in two respects. First, there is *also* no empirical evidence or data showing *Cronobacter* in the Casa Grande facility in 2020 or in the Formula's batch before distribution. Second, Abbott is not required to exclude Plaintiffs' home as a potential source of contamination. *Plaintiffs*, as the parties who instituted this lawsuit, bear the burden of proof on their claims. Plaintiffs "must identify a specific defect by competent evidence *and rule out other possible causes of the damage*." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (emphasis added). Thus, Plaintiffs must either point to evidence suggesting that their home was *not* a potential source of contamination or point to evidence suggesting that Abbott's facility was more likely than not the source of contamination. Plaintiffs claim that they have done the latter, but they have not.

Plaintiffs' theory rests on evidence that *Cronobacter* was detected at the Casa Grande facility *years* before and *years* after the Formula was manufactured, coupled with the fact that *Enterobacteriaceae* were detected during production of the Formula's batch. But there is no evidence that *Cronobacter* was present during the Formula's production, no evidence that *Cronobacter* was present in the Formula's batch before distribution, no evidence that *Cronobacter* was present anywhere at the Casa Grande facility in 2020, and no evidence that any released can of formula from the Casa Grande facility has *ever* tested positive for *Cronobacter*. From this record, a jury could conclude that the Formula's contamination occurred during its manufacturing at the Casa Grande facility only by speculating that contamination existed despite the absence of any evidence to support that conclusion.

A verdict for Plaintiffs would require the jury to infer that *Cronobacter* was present in the Casa Grande facility in 2020 despite the absence of evidence that it

8

was,[5] then infer that contamination occurred during the Formula's manufacturing even though every other can in the Formula's batch that was tested during and after manufacturing tested negative for *Cronobacter*. Texas law does not permit a verdict resting on such stacked inferences and speculation. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) ("[A]n inference stacked only on other inferences is not legally sufficient evidence.").

Plaintiffs quote *Helena Chemical Co. v. Cox*, for the proposition that "alternative causes 'need not necessarily be ruled out entirely' and that experts need only to account for 'plausible alternative causes raised by the evidence.'" Dkt. 177 at 21–22 (emphasis removed) (quoting 664 S.W.3d 66, 80–81 (Tex. 2023)). Plaintiffs then argue that their home "as a potential cause" is "merely hypothetical and not raised by any evidence of record." Dkt. 177 at 22. But, as discussed above, the evidence raises the Casa Grande facility only as a *possible* source, not as a source that is more likely than Plaintiffs' home. The *Cronobacter* detections at the Casa Grande facility on which Plaintiffs rely are too remote in time, and the 2020 *Enterobacteriaceae* swabs tested negative for *Cronobacter*. Plaintiffs may dispute whether this testing was sufficient to exclude contamination with certainty, but Abbott does not have a burden of demonstrating certainty in their testing. The question is whether Plaintiffs have affirmative evidence that makes manufacturing contamination more probable than home contamination.

---

[5] Plaintiffs offer expert opinion that Abbott's testing was insufficient and argue that this inadequate testing—coupled with positive *Cronobacter* swabs from years before and years after the Formula was manufactured and roof leaks—would permit a jury to reasonably infer that it is more likely than not that the Formula was contaminated at the Casa Grande facility in August 2020. While the roof leaks and the adequacy of Abbott's testing regime may be relevant, an expert's opinion about these things, without more, does not permit a reasonable inference that *Cronobacter* was present at the Casa Grande facility in 2020 or that the Formula was contaminated with *Cronobacter* while in Abbott's hands, as both conclusions require a juror to speculate that *Cronobacter* was present at the Casa Grande facility and infer that the Formula became contaminated during manufacturing despite empirical testing to the contrary.

9

They do not. Thus, the outcome here should be no different than the outcome in *Helena Chemical*.

In *Helena Chemical*, the Texas Supreme Court explained that, although plaintiffs need not "necessarily" rule out every alternative cause, plaintiffs must still "account" for plausible alternative causes raised by the evidence and make an affirmative showing that the defendant's conduct was a substantial factor in causing the injury. 664 S.W.3d at 80–82. Plaintiffs have not done that here. Plaintiffs' experts acknowledge that Plaintiffs' home environment was a possible source of contamination, and the undisputed record identifies household risk factors associated with *Cronobacter* presence, including pets moving between indoors and outdoors and shoes worn inside the home. Plaintiffs account for that plausible alternative only by observing that no *Cronobacter* was detected in Plaintiffs' home. *See* Dkt. 127-8 at 3. But no one tested Plaintiffs' home. And the absence of home testing does not supply affirmative evidence that *Cronobacter* was present at the Casa Grande facility in August 2020, that *Cronobacter* contaminated the Formula's batch before distribution, or that the Formula became contaminated while in Abbott's hands. Unlike Plaintiffs' home, which was not tested, Abbott tested the two positive *Enterobacteriaceae* swabs it had in 2020 for *Cronobacter* and both were negative. At most, Plaintiffs' evidence leaves two possible sources of contamination. Against such ambivalent evidence, only speculation, not reasonable inference, would allow a jury to conclude that the Casa Grande facility was the more likely cause of the contamination. Thus, Abbott is entitled to summary judgment.

\* \* \*

Because Plaintiffs' claims fail as to causation, I do not reach Abbott's arguments about whether partial summary judgment is warranted on Plaintiffs' labeling claims or certain of Plaintiffs' claimed damages.

## CONCLUSION

For the reasons discussed above, I recommend that Abbott's motion for summary judgment (Dkts. 127, 128) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED on this 2nd day of July 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

11